## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF MINNESOTA

In re:                                    BKY Case No. 11-60636
                                          Chapter 7
**Bruce J. Lien and**
**Sherie N. Lien,**                       MEMORANDUM OPINION
                                          AND
                    Debtors.              ORDER

_____

At Minneapolis, Minnesota, March 16, 2015.

This matter came on for evidentiary hearing before the Court on December 16, 2014,

upon the chapter 7 Trustee's ("Trustee") motion for a determination that conversion from

chapter 13 to chapter 7 was done in bad faith under 11 U.S.C. § 348(f)(2), and for a

determination that the "inheritance"[1] received by the Debtors during the chapter 13 bankruptcy

filing is property of the chapter 7 bankruptcy estate (the "Bad Faith Conversion Motion"), and

the Debtors' response thereto, as well as the Trustee's motion for turnover appearing at ECF No.

58 (the "Turnover Motion"), and the Debtors' response thereto.  Appearances were as noted on

the record.[2]  After some discussion, the Court allowed the parties, in their discretion, to submit

supplemental briefing on the Turnover Motion.  Both parties did so and the Court took the

matters under advisement.  The matters are now ready for disposition.

_____

[1] So stated by the Debtors on Schedule B of their conversion documents.  Ex. 13.  Both
parties have referred to Bruce Lien's interest as a beneficiary of the Loretta A. Lien Irrevocable
Trust dated November 2, 1999, as an "inheritance."  The technical jargon may more accurately
describe Bruce's "interest" in his mother's trust vis-a-vis his status as a trust beneficiary, e.g., his
entitlement to distributions from trust assets.  For ease of reading, however, the Court may also
utilize the parties' nomenclature in referring to the interest as an "inheritance."

[2] At the hearing, the Court also certified familiarly with the record under Fed. R. Bankr.
P. 9028.  *Stalnaker v. Allison* (*In re Tri-State Financial, LLC*), 519 B.R. 759, 766 n.4 (B.A.P. 8th
Cir. 2014) (Fed. R. Civ. P. 63 applies in bankruptcy cases by virtue of Fed. R. Bankr. P. 9028).

This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), (E), and (O); this Court

has jurisdiction under 28 U.S.C. §§ 157(a) and 1334.  The motions arise under 11 U.S.C. §§ 521

and 542.  The motions were filed under Fed. R. Bankr. P. 9014 and Local Rule 6072-1.  For the

reasons set forth below, the Court will grant the Trustee's motions.

## Background[3]

The Debtors, Bruce and Sherie Lien, originally filed a chapter 13 bankruptcy case on

June 21, 2011.  The Debtors' first amended chapter 13 plan was submitted to the Court on

August 17, 2011; under it, the Debtors proposed to pay $550.00 each month for sixty months for

a total of $33,000.00 to be paid under the plan.  Ex. I.  This plan was confirmed on October 25,

2011.  The Debtors' second amended chapter 13 plan was submitted to the Court on April 2,

2012 and was approved by the Court on May 22, 2012.  Ex. J.  The Debtors' second amended

chapter 13 plan provided that the Debtors would make the same payments of $550.00 per month

for 60 months for a total of $33,000.00, but added an IRS debt to be paid as a priority claim in

the second amended plan.[4]  On July 30, 2014, the debtors filed a verified conversion form,

converting their chapter 13 case to a case under chapter 7.  Ex. 13.

The chapter 13 trustee's final report and account was filed on August 18, 2014; it reflects

that the Debtors paid a total of $19,250.00 during the chapter 13 plan, $4,308.24 of which went

---

[3] On December 9, 2014, the Trustee and the Debtors filed a stipulation of undisputed
facts.  ECF No. 66.  The facts identified in the parties' stipulation are incorporated in the Court's
own findings of fact.  On December 16, 2014, the parties also submitted an amended stipulation
regarding admissibility of exhibits.  ECF No. 69.

[4] While the Debtors were in chapter 13, they added a new creditor to their bankruptcy
case on each of the following dates:  April 16, 2012; February 1, 2013; and March 25, 2013.
ECF No. 66.

to costs of administration, and the remainder to creditors.  The chapter 13 trustee's final report

shows total allowed claims of $345,241.97.

Bruce Lien was appointed the trustee of the Loretta A. Lien Irrevocable Trust dated

November 2, 1999.  Ex. 9; Ex. B.  Loretta A. Lien was Bruce Lien's mother.  Mr. Lien testified

that, at the time, he understood that he was also a beneficiary under the trust and he knew that his

mother owned farmland.  Bruce and his siblings are each beneficiaries under the trust. The trust

provided that upon the death of the debtor's mother, Bruce, along with his eleven siblings, would

each be entitled to one equal share of the assets of the trust, i.e., each was entitled to a one-

twelfth share, unless alternative provisions of distribution were invoked.[5]

Bruce Lien testified that he began his duties as trustee of the trust in January 2012, when

his mother was admitted to the nursing home;[6] prior to that, his mother was in an assisted living

facility since autumn of the preceding year, and prior to that, had lived alone, having been

"feisty."  Bruce Lien's mother died on April 7, 2012, at which time he became entitled to receive

property from his mother's trust.  Ex. C.[7]  At that time, Bruce was also advised by the attorney

for his mother's estate that Bruce was the sole trustee.

Sherie Lien testified that Bruce and his brother decided to liquidate their mother's trust

estate sometime in 2013.  There were two parcels of real estate in the trust, which are legally

---

[5] Alternative provisions of distribution have not been invoked.

[6] Bruce also testified that his brother was–for a period of time–an "acting trustee" or a "secondary trustee."

[7] Sherie Lien testified that she was aware that Bruce was a beneficiary of the trust after his mother's death.

described in the trust document.  Ex. 9; Ex. B.[8]

Parcel 1 was sold and the debtor received his share from the sale of that property in

August, 2013, in the amount of $34,191.00.  The Debtors did not report the income from this

inheritance/land sale to the chapter 13 trustee.  These funds were deposited into the Debtors'

Mid Central Federal Savings Bank account, and the statement for that account reflects an ending

balance of $19,925.32 as of June 30, 2014.  Ex. 17.  Sherie Lien testified that the difference was

spent on medical bills and business debt.  Sherie and Bruce further testified that additional

amounts of the sale proceeds have since been spent, leaving a current balance of approximately

$17,000.00.

Prior to trial, and per the parties' stipulation of undisputed facts, Parcel 2 had been listed

for sale with a listing price of $159,000.00, which would have yielded a potential gross recovery

from the sale of that land, before costs of sale, of $13,250.00 ($159,000.00 /12 children =

$13,250.00).  ECF No. 66.

In addition, Bruce Lien has a claim to a one-twelfth interest in $40,000.00 currently

being held in escrow for taxes and trust expenses by the attorney for the trust.

As noted, Bruce Lien received the funds from the sale of Parcel 1 of the real estate in

approximately August 2013 and did not notify the chapter 13 trustee.[9]  Both Debtors testified,

---

[8] In the Bad Faith Conversion Motion, the Trustee refers to the property described as
"Parcel B" in the trust document as "Parcel 1," and he refers to the property described as "Parcel
A" in the trust document as "Parcel 2."  Compare ECF No. 50 with Ex. 9; Ex. B.  For ease of
reference, and for context in relation to which property sold first, the Court will utilize the
Trustee's naming convention.

[9] Bruce Lien testified that he had not advised the chapter 13 trustee because he "didn't
[know he] had to."

rather unconvincingly, that they had no idea that they had an obligation to report additional

disposable income or property to which they became entitled during the pendency of their

chapter 13 case, i.e., after the filing of their chapter 13 case.[10]  This testimony was belied by the

fact that Bruce Lien testified that he knew he had an obligation, among other things, to submit

copies of the Debtors' state and federal income tax returns to the chapter 13 trustee.  And, the

Debtors' second amended chapter 13 plan, provided, at ¶ 13, that the "debtors will submit copies

of their state and federal income tax returns to the Trustee annually while this case is pending

and shall be entitled to retain the first $2.000 ($1,200 if single) plus any earned income credit

and Minnesota Working Family Credit.  Any remaining amounts shall be turnover to the Chapter

13 trustee as additional plan payments."  Ex. J.  More specifically, both Debtors unconvincingly

testified that they were under the belief that they had no obligation to report the inheritance that

Bruce Lien received after the passing of his mother, a substantial amount when viewed in

comparison to what the Debtors were paying their unsecured creditors under their chapter 13

plan.  In actuality, the amount the Debtors received from the trust proceeds from the sale of

Parcel 1 *alone*, $34,191.00, was more than the *entire* amount the Debtors were to pay under their

chapter 13 plan, which was $33,000.00.

Not long after receiving a copy of the Debtors' 2013 federal tax return, on May 29, 2014,

the chapter 13 trustee's office sent the Debtors a letter inquiring about the Loretta Lien

Irrevocable Trust referred to in Schedule E of the Debtors' 2013 tax return, as well as requesting

---

[10] *See* the Debtors' second amended chapter 13 plan, at ¶ 13, which stated that the
"debtors shall contribute all disposable income into this plan for the length of time set forth in
paragraph 1 [of the plan]."  Ex. J.

other income information,[11] and documentation and turnover of a portion of the 2013 tax refund.
Exs. 6 & 21.  Bruce Lien testified that he was very "upset" about this letter, primarily because of
the chapter 13 trustee's request for information regarding the trustee's assertion that the tax
return reflected greater income than that reflected in the Debtors' schedules.

On June 19, 2014, the Debtors' attorney requested information from the chapter 13
trustee as to a "payoff" amount for the chapter 13 case.  Ex. 16.  The chapter 13 trustee's office
provided counsel for the Debtors the amount required to pay all claims in full, $293,432.80.[12]
The Debtors never discussed the inheritance with the chapter 13 trustee, e.g., the proceeds from
the sale of Parcel 1, or that they had a right to a share of the sale proceeds from Parcel 2.[13] The
Debtors made no effort to resolve the inheritance issue with the chapter 13 trustee, as Mr.
Gieseke testified chapter 13 debtors sometimes do, e.g., when they become entitled to an

---

[11] The letter stated, among other things, that according to the Debtors' 2013 tax return,
the Debtors' "wage income" was "$15,589.59/month," which Bruce Lien testified was
inaccurate.  It is unclear how the chapter 13 trustee arrived at this figure.  Ex. 21.

[12] A staff attorney for the chapter 13 trustee, Michael Gieseke, testified that, because this
was a 60-month plan, and because the Debtors were above-median income, the Debtors were not
allowed to pay off only the remaining payments due under the plan; rather, the Debtors needed to
pay all unsecured claims in full, i.e., in a "payoff" scenario.

[13] Mr. Gieseke testified that, since 2014, the chapter 13 trustee typically inquires of
debtors at the § 341 meeting of creditors if the debtors are beneficiaries under a trust or if the
debtor is a trustee under a trust; no such information was disclosed on the Debtors' initial filings,
either.  Ex. 1.  Mr. Gieseke could not say whether such questions had been asked of the Debtors'
at their initial meeting of creditors in 2011.  Mr. Gieseke further testified that if a chapter 13
debtor receives an inheritance, often a modified plan is required, since this post-petition property
is property of the estate.  See 11 U.S.C. § 1306(a)(1).  Mr. Gieseke also testified that, in some
cases, voluntary dismissal of the case may be the remedy.  He further testified that the chapter 13
trustee also considers an inheritance "disposable income."

inheritance or receive other, unexpected disposable income–post-confirmation.[14]  Instead, the

Debtors converted their chapter 13 case to a case under chapter 7.

Sherie Lien testified that the reason for the conversion had not been because the Debtors

were financially unable to make their chapter 13 plan payments; rather, it was because the

Debtors understood that they could "pay off" their chapter 13 plan.  When asked by the Trustee

at trial whether the inheritance had anything to do with the conversion, Sherie Lien–rather

forcefully–responded, "absolutely not!"  Initially, Bruce Lien testified at trial that the reason the

Debtors converted their case to chapter 7 was to "move on" with life.[15]  However, upon further

inquiry from the Trustee at trial, Bruce Lien later admitted that "part of" of the reason for the

conversion was indeed the inheritance.

On Schedule B of the conversion documents, the Debtors identified an "inheritance over

180 days from filing date" in the amount of $34,191.00, which was Bruce Lien's interest in the

proceeds from a sale of one parcel of farmland previously owned by his mother.  Ex. 13.  None

of the conversion documents, however, disclosed Bruce Lien's one-twelfth interest in the second

parcel of real property, also previously owned by his mother, and which, according to Mr. Lien's

testimony, sold on December 12, 2014 for $140,000.00; he also testified that he was entitled to

one-twelfth of the net proceeds of the $140,000.00.[16]  The Debtors also failed to disclose a

---

[14] One option might be a post-confirmation plan modification under 11 U.S.C. § 1329, in which case a proposed post-confirmation modified plan would be vetted by the debtor's creditors.

[15] He also testified that he wanted to clear the record because of the views of the industry in which he makes his living, and the resultant stigma associated with being in bankruptcy.

[16] To be clear, this was in addition to the $34,191.00 received from the sale of Parcel 1.

Toyota automobile, which was purchased for Sherie Lien, pre-conversion, for $2,500.00.[17]

Finally, the Debtors did not disclose Conservation Reserve Program ("CRP")[18] annual payments,

which Bruce Lien testified totaled approximately $2,500.00 to $3,000.00 per year, and which

Mr. Lien testified the Debtors had been receiving since 2001 or 2002.

   The Debtors testified that they could have continued making payments under the chapter

13 plan without incurring a financial hardship,[19] as their income had increased during their

chapter 13 bankruptcy.  Indeed, Sherie Lien testified that the Debtors could have continued

making payments under their chapter 13 plan; she also testified that no negative financial event

occurred that would have prevented the Debtors from making their plan payments.

   In point of fact, the Debtors' income had actually increased each year since their chapter

13 bankruptcy was filed.[20]  Indeed, Bruce Lien testified that he expected that the Debtors'

income for 2014 will have increased by 5% from the previous year.[21]  The Debtors are still

---

[17] Bruce Lien testified that this vehicle was purchased after their chapter 13 case had been filed, but before the conversion to chapter 7.

[18] The CRP is a cost-share and rental payment program under the United States Department of Agriculture ("USDA"); the program is administered by the USDA Farm Service Agency.  16 U.S.C. §§ 3801, 3831–35.

[19] Mr. Gieseke testified that, aside from one early payment and two late payments, the Debtors had been generally current on their chapter 13 plan payments, but that the two late payments had been quickly cured.

[20] The Debtors' adjusted gross income from line 37 of their 2011 federal tax return showed negative income of $60,820.  Line 37 of the Debtors' 2012 federal tax return showed adjusted gross income of $56,378.  Line 37 of the Debtors' 2013 federal tax return showed adjusted gross income of $86,126.  ECF No. 66; Exs. D, E, & F.

[21] Mr. Lien's brief, contrary testimony, during examination by his attorney at trial, that it would now be difficult for the Debtors to make chapter 13 plan payments, was simply not credible.

employed.  Sherie Lien is employed part-time, performing bookkeeping work for the Debtors'

insurance agency, Wadena Agency Incorporated, and also works as a manufacturer's "rep" for

Midwest Energy Systems.  Bruce Lien is an insurance agent for Farm Bureau, through his

agency, Wadena Agency Incorporated.  Bruce is a 100% owner of both Wadena Agency

Incorporated and Midwest Energy Systems; Bruce sets his own salary as well as Sherie's.

### Discussion

**Bad Faith Conversion**

Section 348(f)(2) of the Bankruptcy Code provides:  "If the debtor converts a case under

chapter 13 of this title to a case under another chapter under this title in bad faith, the property of

the estate in the converted case shall consist of the property of the estate as of the date of

conversion."  11 U.S.C. § 348(f)(2).  Because "bad faith" is not a defined phrase, the Court must

look to the case law to discern its meaning:

> Bad faith is not defined in the Bankruptcy Code nor has the term as used in §
> 348(f)(2) been interpreted by any court in this jurisdiction. In *In re Siegfried*, 219
> B.R. [581, 585 (Bankr. D. Colo. 1998)], and *Warren v. Peterson*, 298 B.R. 322,
> 327 (N.D. Ill. 2003), the courts defined bad faith by referring to the term "good
> faith" in 11 U.S.C. § 1325(a)(3). The Fifth Circuit long-ago adopted a "totality of
> the circumstances" test for deciding whether a Chapter 13 plan has been filed in
> good faith and satisfies § 1325(a)(3).

*In re Mullican*, 417 B.R. 389, 401 (Bankr. E.D. Tex. 2008), aff'd, 417 B.R. 408 (E.D. Tex.

2009).  *See also In re Love*, 957 F.2d 1350, 1357 (7th Cir. 1992) ("[T]he focus of the good faith

inquiry under both Sections 1307 and 1325 is often whether the filing is fundamentally fair to

creditors and, more generally, is the filing fundamentally fair in a manner that complies with the

spirit of the Bankruptcy Code's provisions.").  And, as the Eighth Circuit Bankruptcy Appellate

Panel recently stated:

> The term "good faith" is not defined in the Bankruptcy Code or its legislative
> history. [*In re LeMaire*, 898 F.2d 1346, 1348 (8th Cir. 1990)].  Prior to the
> enactment of a new section 1325(b) as part of the Bankruptcy Amendments and
> Federal Judgeship Act of 1984, Pub.L. No. 98–353 (1984), the Eighth Circuit
> provided a non-exclusive list of several factors to consider when determining
> whether the totality of the circumstances showed that good faith existed.  *U.S. v.
> Estus (In re Estus)*, 695 F.2d 311, 316 (8th Cir. 1982).  In *Educ. Assistance Corp.
> v. Zellner*, 827 F.2d 1222 (8th Cir. 1987), the Eighth Circuit considered the effect
> of the new section 1325(b)'s ability to pay test on the factors set forth in *Estus*.
> According to the Eighth Circuit, the criteria required by new section 1325(b)
> "subsumes most of the *Estus* factors."  It explained that the court's "inquiry into
> whether the plan 'constitutes an abuse of the provisions, purpose or spirit of
> Chapter 13' has a more narrow focus. The bankruptcy court must look at factors
> such as whether the debtor has stated his debts and expenses accurately; whether
> he has made any fraudulent misrepresentation to mislead the bankruptcy court; or
> whether he has unfairly manipulated the Bankruptcy Code." *Zellner*, 827 F.2d at
> 1226–27 (quoting *Estus*, 695 F.2d at 316).  In *LeMaire*, the Eighth Circuit
> explained that "*Zellner* preserved the traditional 'totality of circumstances'
> approach with respect to *Estus* factors not addressed by the [1984] legislative
> amendments."  *LeMaire*, 898 F.2d at 1349.

*Fink v. Thompson* (*In re Thompson*), 439 B.R. 140, 143 (B.A.P. 8th Cir. 2010); *Tina Livestock

Sales, Inc. v. Schachtele* (*In re Schachtele*), 343 B.R. 661, 668 (B.A.P. 8th Cir. 2006) ("the

Eighth Circuit preserved parts of the *Estus* 'totality of circumstances' approach and, thus, factors

such as the type of debt sought to be discharged and whether the debt is nondischargeable in

Chapter 7, and the debtor's motivation and sincerity in seeking Chapter 13 relief, are particularly

relevant").

In a case largely on "all fours" with the case at bar, the court in *Mullican* utilized the

"totality of circumstances" approach and found the following circumstances should be

considered in making the "bad faith" determination under § 348(f)(2):

> In determining whether a Chapter 13 case has been converted in bad faith, the
> Court considers whether the conversion was motivated by an inability to make
> required payments to the Chapter 13 trustee. The Court also considers whether the
> debtors have been forthcoming regarding the existence of any post-petition
> change in circumstances that might affect their ability to make payments to their

10

creditors and whether the conversion would create a windfall for the debtors
(other than a decrease in liabilities) to which they would not have been entitled
but for the existence of their pending Chapter 13 case.

*Mullican*, 417 B.R. at 401. Utilizing this rubric, the *Mullican* court found that the debtors had

converted their case in bad faith because the debtors had been current on their chapter 13 plan

payments; the inheritance would have paid unsecured creditors in full; the debtors paid family

member debts and not other unsecured creditors; the debtors had spent some of the inheritance;

and the debtors had made false representations about the use of some the inheritance proceeds.

*Id*. at 402–03. *See also In re Castillo*, 508 B.R. 1 (Bankr. W.D. Tex. 2014) (utilizing the

*Mullican* test in addressing the "bad faith" issue under § 348(f)(2); trustee failed to satisfy

burden of showing that conversion of debtors' chapter 13 case to one under chapter 7 was in bad

faith, so that chapter 7 estate did not included these inherited interests).

Further, the another court described the fact-intensiveness of the inquiry under §

348(f)(2):

The Court disagrees with the Debtors' assertion that only bad faith in the
conversion of the case is relevant. Rather, the Court must look at the Debtors'
conduct throughout the case . . . The cases cited by the [sic] both the Trustee and
the Debtors concur that section 348(f)(2) requires a finding of bad faith. This is
more than a lack of diligence, however. It requires a determination that the
Debtors unfairly manipulated the bankruptcy process to the disadvantage of
creditors . . . This is a fact-intensive inquiry.

*In re Perez*, 345 B.R. 137, 141 (Bankr. D. Del. 2006) (citing *In re Bejarano*, 302 B.R. 559, 562

(Bankr. N.D. Ohio 2003) and *In re Siegfried*, 219 B.R.581 (Bankr. D. Colo. 1998)). *See also In*

*re Malone*, 2011 WL 1541289, at *4 (Bankr. D. Neb. Apr. 21, 2011) ("For purposes of

§ 348(f)(2), it generally is found in situations where the weight of the evidence indicates the

debtor is dishonest, deceptive, or unfairly manipulating the bankruptcy system.").

11

In *Perez*, the court concluded:

> The Trustee has presented evidence that the Debtors were dilatory in filing their Schedules, responding to motions, and making payments to the chapter 13 trustee. Unfortunately, this is not unusual for persons in financial distress. The Debtors' explanation for their actions is plausible and not contested by the Trustee: they were trying to save a rental property. As a result of Mr. Perez's unemployment which lasted several months, however, the Debtors were unable to make the chapter 13 plan payments and lost their rental property and vehicle to foreclosure. Once that occurred, the Debtors found there was no reason to remain in chapter 13.
>
> The Court concludes that the actions of the Debtors in their chapter 13 case do not rise to the level of bad faith. Nor does there appear to be a manipulation of the bankruptcy process by the Debtors or any unfair advantage gained over creditors. Therefore, the Court concludes that the Trustee has failed to meet the standard for application of section 348(f)(2).

*Perez*, 345 B.R. at 141–42.

Additional factors for consideration include "the timing of the conversion, the chapter 13 pay history, the debtor's participation in the chapter 13 process, the amount of post-petition debt, . . . the debtor's previous bankruptcy filings, and the value of assets in question." *In re Smith*, 2012 WL 43647 at 3 (Bankr. N.D. Ohio January 9, 2012) (citing *In re Bejarano*, 302 B.R. 559, 562 (Bankr. N.D. Ohio 2003)). "The undisputed conduct of concealment of assets and the non-reporting of income is sufficient to find bad faith." *In re Standifered*, 2009 WL 7831848, at *3 (D. N.M. Aug. 17, 2009) (citing *Siegfried*, 219 B.R. at 585-86 (Bankr. D. Colo. 1998)).

"Similarly, the court must look at conduct throughout the entire case, both pre- and post-conversion, . . . as a debtor's actions post-conversion are relevant to 'help a court ascertain the credibility of a debtor's statements regarding the motivation for conversion[.]'" *In re Wiggins*, 2012 WL 3889099, at **4–7 (Bankr. E.D. Tenn. 2012) (quoting *Smith*, 2012 WL 43647, at *3 and adopting the above analysis; "the court finds that the Debtors converted their Chapter 13 case in bad faith. The inherited property consisting of the remaining funds in the amount of

$10,000.00 and the [real property] are property of their converted Chapter 7 bankruptcy case and subject to administration by the Trustee").

The Court finds the analyses of these courts instructive,[22] and not inconsistent with the Eighth Circuit's corollary authority.

In this case, the evidence shows that the Debtors could have continued making payments under their chapter 13 plan without incurring a financial hardship, as their income has increased during the chapter 13 bankruptcy, and since, for that matter.  This is troubling to the Court.  Indeed, the Debtors testified that they could have continued making payments under their chapter 13 plan.  They also testified that no negative financial event occurred that would have prevented the Debtors from making their plan payments.  And, significantly, the Debtors are still employed.

Also troubling is that both of the Debtors testified, rather unconvincingly, that they had no idea that they had an obligation to report additional disposable income or property to which they became entitled during the pendency of their chapter 13 case, including, most importantly, the inheritance-related property, i.e., after the filing of their chapter 13 case.  *See* the Debtors' second amended chapter 13 plan, at ¶ 13.  Ex. J.  As noted, this testimony was belied by the fact that Bruce Lien testified that he knew he had an obligation, among other things, to submit copies of the Debtors' state and federal income tax returns, as well as, at least potentially, excess tax

---

[22] Moreover, the facts of this case are remarkably similar to the facts in *Wiggins*, where one of the debtors inherited money from his mother and the debtors converted their chapter 13 case to chapter 7.  The chapter 7 trustee in that case brought a motion asking the court to enter an order directing the debtors to turn over the funds under § 348(f)(2).  The court, after having gone through the analysis of many of the cases cited here, determined that the debtors had converted their chapter 13 case in bad faith and the remaining property from the inheritance was property of the chapter 7 estate.  *In re Wiggins*, 2012 WL 3889099 (Bankr. E.D. Tenn. 2012).

refunds, to the chapter 13 trustee.  *Id.*

Additionally, the Court finds the Debtors' testimony regarding the true reason(s) for the conversion less than entirely forthcoming.  As noted, Sherie Lien testified that the reason for the conversion was not because the Debtors were financially unable to make their chapter 13 plan payments, but rather because the Debtors understood that they could "pay off" their chapter 13 plan.  And when asked by the Trustee at trial whether the inheritance had anything to do with the conversion, Sherie Lien rather forcefully responded, "absolutely not!"  This testimony is rather convenient for the Debtors, especially when viewed in the light of the fact that Bruce Lien later admitted at trial that at least "part of" of the reason for the conversion was, in fact, the inheritance.  Equally unconvincing is the Debtors' testimony that they did not think the inheritance would have any effect on their obligations under their chapter 13 plan, i.e., their pledge of their disposable income to their unsecured creditors.  *Id.*  Indeed, Bruce Lien testified that he was aware that the Debtors were under an obligation to provide the chapter 13 trustee with any excess post-petition tax refunds the Debtors received.  *Id.*

Further, on Schedule B of the conversion documents, while the Debtors identified an "inheritance over 180 days from filing date" in the amount of $34,191.00, the Debtors did not disclose Bruce Lien's one-twelfth interest in a second parcel of real property, also previously owned by his mother–a parcel that, according to Bruce Lien's testimony, sold on December 12, 2014, for $140,000.00.  Mr. Lien also testified at trial that he was entitled to one-twelfth of the net proceeds of the $140,000.00.  The Debtors also failed to disclose a Toyota automobile purchased, pre-conversion, for $2,500.00, for Sherie Lien.  Finally, the Debtors did not disclose CRP annual payments, which Bruce Lien testified totaled approximately $2,500.00 to $3,000.00

14

per year, and which Mr. Lien testified the Debtors had been receiving since 2001 or 2002.

Taken in isolation, one of the above omissions might be understandable–an innocent mistake, or oversight, if you will.  But, taken collectively, as the Court must do under the totality-of-the-circumstances analysis required under § 348(f)(2), these omissions evidence a manipulation of the Bankruptcy Code in an effort to obtain a windfall,[23] at the expense of the Debtors' creditors.

If the inheritance-related property is not brought into the chapter 7 bankruptcy estate, the Debtors will receive a windfall by virtue of their conversion to chapter 7.  The Court finds that the main reason for the Debtors' conversion from chapter 13 to chapter 7 was to avoid paying to the chapter 13 trustee the non-exempt inheritance[24] received by Bruce Lien during the chapter 13 bankruptcy.  Accordingly, the Court concludes that the Debtors' conversion from chapter 13 to chapter 7 was one done in bad faith under § 348(f)(2).

**Property of the Estate and the Turnover Motion**

Section 348(f)(1) of the Bankruptcy Code provides, among other things, that property of the estate in a converted case is the property the debtor had when the debtor filed the original chapter 13 petition, that is still in the possession of or under the control of the debtor.  11 U.S.C. § 348(f)(1).  *See also*, *In re Alexander*, 236 F.3d 431, 433 (8th Cir. 2001) ("The legislative

---

[23]   As noted, the amount the Debtors received from the inheritance proceeds from the sale of Parcel 1 alone, $34,191.00, was more than the entire amount the Debtors were to pay under their chapter 13 plan, which was $33,000.00.  But this is just part of the windfall–witness the proceeds generated from the sale of Parcel 2, as well as the other inheritance-related property.

[24] 11 U.S.C. § 1306(a)(1) ("Property of the estate includes, in addition to the property specified in section 541 of this title--(1) all property of the kind specified in such section that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first[.]").

history to section 348(f)(1) indicates that Congress intended this language to overrule the

holding of cases . . . holding that the property of the estate in a converted case is the property the

debtor had when he filed his original Chapter 13 petition." (citing 140 Cong. Rec. H10770 (Oct.

4, 1994)).[25]

Section 348(f)(2), however, trumps the general rule of § 348(f)(1); § 348(f)(2) provides

that, if a chapter 13 debtor converts the case to another chapter in bad faith, the property of the

estate in the converted case consists of the property of the estate as of the date of conversion.  11

U.S.C. § 348(f)(2) ("If the debtor converts a case under chapter 13 of this title to a case under

another chapter under this title in bad faith, the property of the estate in the converted case shall

consist of the property of the estate as of the date of conversion.").  *See, e.g.*, *Standiferd v. U.S.*

*Trustee*, 641 F.3d 1209 (10th Cir. 2011) (§ 348(f)(2) provides that, if a chapter 13 debtor

converts a case to a case under another chapter in bad faith, the property of the estate in the

converted case shall consist of the property of the estate as of the date of conversion); *In re Bell*,

225 F.3d 203 (2d Cir. 2000) (under § 348(f)(2), upon conversion of a chapter 13 case,

after-acquired property does not form part of the converted estate unless the case was converted

in bad faith).  *See also In re Michael*, 699 F.3d 305 (3d Cir. 2012) (absent a showing of bad

faith, undistributed plan payments that are held by a chapter 13 trustee when the chapter 13 case

is converted must be returned to debtor); *In re Rosenberg*, 303 B.R. 172, 176 (B.A.P. 8th Cir.

2004) ("Absent bad faith, when a case is converted from Chapter 13 to Chapter 7, property of the

estate in the Chapter 7 case consists of the property of the estate as of the original Chapter 13

---

[25] Section 348(f) was later amended by the 2005 Act.  *See* The Bankruptcy Abuse
Prevention and Consumer Protection Act of 2005 (the "BAPCPA"), Pub. L. No. 109-8, 119 Stat.
23 (2005).

petition date which remains in the debtor's control at the time of conversion."); *Farmer v. Taco Bell Corp.*, 242 B.R. 435, 439 (W.D. Tenn. 1999) (debtors' failure to schedule personal injury claim that arose after debtors' chapter 13 plan was confirmed but prior to debtors' conversion of their case to chapter 7 did not preclude debtors from pursuing claim when claim did not become property of bankruptcy estate under § 348(f)(1)(A), "after-acquired property belongs to the debtor pursuant to § 348(f)(1)(A) unless the conversion was made in bad faith, triggering application of the bad faith exception under § 348(f)(2)").

In a bad faith conversion case, property of the estate includes after-acquired property, i.e., property of the chapter 13 debtor acquired post-petition. *See*, *e.g.*, *In re Harris*, 757 F.3d 468, 478 (5th Cir. 2014) ("If the debtor is found to have converted in bad faith, all of the property he has acquired after filing will be included in the Chapter 7 estate and therefore be liquidated."); *In re Reeves,* 509 B.R. 35 (Bankr. S.D. Tex. 2014) (debtors, who converted their case from chapter 13 to chapter 7 in bad faith after confirmation of a chapter 13 plan, were required to file amended schedules reflecting their financial condition on the conversion date, i.e., a schedule of property, not listed in the final report, acquired between the petition date and the conversion date).  "Of course, it is possible that upon conversion, the debtor may no longer have in his possession any property acquired after filing the Chapter 13 petition; in that specific scenario, undistributed wages held by the trustee would constitute all of the debtor's remaining post-petition property." *Harris*, 757 F.3d at 478 n.9.

On November 24, 2014, the Trustee filed the Turnover Motion, seeking turnover of the following "nonexempt" property of the Debtors:

A.  Prince poster ebay - $200.00;

17

B.  Two prints - $1,000.00;

C.  Firearms – two 12 gauges, one 410, two .22s, one 25.06 and one ML - $1,100.00;

D.  2005 GMC Sierra - $11,600.00 equity;

E.  2004 Crestliner boat with '04 4-stroke 115 Yamaha motor - $7,000.00;

F.  Duck boat - $50.00;

G.  '99 Polaris 550cc snowmobile - $1,000.00; and

H.  2004 Sportsman 600cc ATV - $3,000.00.

Initially, the Debtors responded and proposed that they obtain third-party valuations for the following property:  2005 GMC Sierra;[26] 2004 Crestliner boat, 99 Polaris 550 cc snowmobile, and the 2004 Sportsman 600 cc ATV.  ECF No. 68.  In that response, the Debtors also requested that "the Court determine whether any assets should be turned over to the chapter 7 trustee for liquidation based on the amended schedules and chapter 13 distribution to creditors." *Id*.

As noted earlier, at the hearing on the Trustee's motion for turnover held on December 16, 2014, and after some discussion, the Court allowed the parties to submit supplemental briefing on the Turnover Motion.  The Trustee filed his supplemental brief at ECF No. 72, and the Debtors filed their supplemental brief at ECF No. 73, along with amended Schedules B and C, at ECF No. 74 (via this document, and as relevant here, the valuations of the "nonexempt" assets in the Trustee's Turnover Motion remain unchanged).

In his supplemental brief, the Trustee states, among other things, and rather

---

[26] This asset is the subject of a separate motion by the Trustee objecting to Sherie's claim of exemption in the vehicle–see ECF No. 78; the motion is currently set for evidentiary hearing on May 27, 2015.

18

pragmatically: "The trustee is merely seeking turnover of assets which were either not exempted or were partially nonexempt . . . The estate is not seeking the difference between what the assets were worth at the time of the Chapter 13 filing, and their value at conversion. There is no need to revalue assets as of the time of conversion, and the trustee requests that the Court order turnover of the assets as requested in the turnover motion."  ECF No. 68.  In their response, however, the Debtors stated that "the parties agree that an updated valuation is not necessary and the [ ] assets [listed in the Turnover Motion], with their chapter 13 values, are correct," but then jumped to the conclusion that, in this case, "liquidation would create a disincentive for debtors to file chapter 13 if their actual payments to creditors were not recognized by the Court."  Such an argument is fundamentally flawed, however, since a finding of "bad faith" under § 348(f)(2) trumps the "default" rule of § 348(f)(1).  And the Court has already determined that this is not a "§ 348(f)(1)" case; it is a "bad faith" case under § 348(f)(2).

"Section 348(f)(1) provides that property of the estate in a converted chapter 13 case shall consist of the property of the estate as of the date of the petition and that remains in the debtor's possession or control at conversion. Notably, subsection (f)(2) provides that valuations of property in chapter 13 do not survive conversion to chapter 7."  *In re Auernheimer*, 437 B.R. 405, 409 (Bankr. D. Kan. 2010).  "Section 348(f)(2) provides that any appreciation in the value of [the debtors'] home becomes property of the converted Chapter 7 estate."  *In re Standiferd*, 2008 WL 5273690 (Bankr. D. N.M. 2008) (citing *In re Perez*, 345 B.R. 137, 141 (Bankr. D. Del. 2006) (acknowledging that under § 348(f)(2), post-petition, pre-conversion earnings and appreciation of property become property in the converted chapter 7 case upon a finding that debtors converted their case in bad faith)).

19

Both parties argue that no re-valuation of the property listed in the Turnover Motion is required; that may or may not be true. But, the Trustee is not *bound* by an earlier valuation, i.e., with respect to the § 348(f)(2) context, including valuation of after-acquired property. Here, however, neither the Debtors nor the Trustee seek re-valuation. And as § 348(f)(2) makes clear: "If the debtor converts a case under chapter 13 of this title to a case under another chapter under this title in bad faith, the property of the estate in the converted case shall consist of the property of the estate as of the date of conversion." 11 U.S.C. § 348(f)(2). Because the following property is not claimed exempt by the Debtors, and because it is property of the estate virtue of § 348(f)(2), the Trustee is entitled to its turnover:

    A.  Prince poster ebay - $200.00;

    B.  Two prints - $1,000.00;

    C.  Firearms – two 12 gauges, one 410, two .22s, one 25.06 and one ML - $1,100.00;

    D.  2004 Crestliner boat with '04 4-stroke 115 Yamaha motor - $7,000.00;

    E.  Duck boat - $50.00;

    F.  '99 Polaris 550cc snowmobile - $1,000.00; and

    G.  2004 Sportsman 600cc ATV - $3,000.00.

Because the 2005 GMC Sierra is the subject of a separate motion by the Trustee objecting to Sherie's claim of exemption in the vehicle, *see* ECF No. 78, and because the motion is currently set for evidentiary hearing on May 27, 2015, the Court reserves ruling on its turnover pending the outcome of the evidentiary hearing.

## Conclusion

The Court concludes that the Debtors' conversion in this case was done in bad faith.

Because the conversion was in bad faith under § 348(f)(2), the property of the Debtors as of the

date of conversion is property of the chapter 7 bankruptcy estate, and the non-exempt property

thereof must be turned over to the Trustee.

Accordingly,

**IT IS ORDERED:**

    1.     The Trustee's Bad Faith Conversion Motion is granted:

A.  The Debtors shall turn over the funds from sale of the inherited real

estate already received, $34,191.00, to the Trustee, or the *remaining*

proceeds from that sale, and any other property or funds received from his

mother's trust estate, including the net proceeds from the sale of Parcel 2;

B.  Any *net* recovery to be paid to Bruce Lien from the $40,000.00

currently being held by the trust for trust expenses, shall be turned over to

the Trustee; and

C.  In the event the Debtors are unable to turn over the full amount of

$34,191.00 to the Trustee, the debtors shall turn over any assets purchased

with the inherited funds, within ten days of the date of this order.

    2.     The Trustee's Turnover Motion is granted in part and the Debtors shall

deliver to the Trustee the following property within ten days of the date of

this order:

A.  Prince poster ebay - $200.00;

B.  Two prints - $1,000.00;

C.  Firearms – two 12 gauges, one 410, two .22s, one 25.06 and one ML -
$1,100.00;

D.  2004 Crestliner boat with '04 4-stroke 115 Yamaha motor - $7,000.00;

E.  Duck boat - $50.00;

F.  '99 Polaris 550cc snowmobile - $1,000.00; and

G.  2004 Sportsman 600cc ATV - $3,000.00.

3. The Court reserves ruling on that portion of the Trustee's Turnover

motion requesting turnover of the $11,600.00 in "equity" regarding the

2005 GMC Sierra pending the outcome of the May 27, 2015 evidentiary

hearing regarding the Trustee's exemption objection with respect to the

vehicle.

4. The Trustee's request for $300.00 in attorney's fees for bringing the

Turnover Motion is denied.

NOTICE OF ELECTRONIC ENTRY AND
FILING ORDER OR JUDGMENT
Filed and Docket Entry made on *03/16/2015*
Lori Vosejpka, Clerk, by MJS

*/e/ Michael E. Ridgway*
_____

Michael E. Ridgway
United States Bankruptcy Judge

22